IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

LESLIE CAROL BROWN                                                                              PLAINTIFF

V.                           Case No. 4:24-CV-00385-BRW-BBM

MARTIN O'MALLEY, Commissioner,
Social Security Administration                                                                  DEFENDANT

## RECOMMENDED DISPOSITION

This Recommended Disposition ("Recommendation") has been sent to United States District Judge Billy Roy Wilson. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not file objections, Judge Wilson may adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

I.   **INTRODUCTION**

On October 26, 2021, Plaintiff Leslie Carol Brown ("Brown") filed a Title XVI application for supplemental security income, alleging disability beginning on April 1, 2021. (Tr. at 13). The application was denied initially and on reconsideration. *Id*. After conducting a hearing, an Administrative Law Judge ("ALJ") issued a partially favorable determination, finding that Brown was not disabled before May 10, 2023, but became disabled on that date. (Tr. at 13–24).

The Appeals Council denied Brown's request for review of the ALJ's decision on March 1, 2024. (Tr. at 1–5). The ALJ's decision now stands as the final decision of the Commissioner, and Brown has requested judicial review. For the reasons stated below, the Court recommends that the Commissioner's decision be affirmed.

## II.   THE COMMISSIONER'S DECISION

The ALJ found that Brown has not engaged in substantial gainful activity since the date of her application—October 26, 2021.[1] (Tr. at 15). At Step Two, the ALJ determined that Brown has the following severe impairments: spine disorder, obesity with gastric bypass, depression, anxiety, posttraumatic stress disorder, and personality disorder. *Id*.

At Step Three, the ALJ determined that Brown's impairments did not meet or equal a Listing.[2] (Tr. at 15–17). The ALJ determined that, prior to May 10, 2023, Brown had the residual functional capacity ("RFC") to perform work at the light exertional level, except that (1) she can no more than occasionally climb, balance, crawl, kneel, stoop, and crouch; (2) she can no more than frequently finger and handle bilaterally; (3) she can understand, remember, and carry out simple instructions; and (4) she can perform work where

---

[1] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)–(g).

[2] 20 C.F.R. Part 404, Subpt. P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926). The Listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just "substantial gainful activity." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (internal citations omitted). That is, if an adult is not actually working and his impairment matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits without a determination of whether he actually can perform his prior work or other work. *Id*.

2

interpersonal contact is incidental to the work performed. (Tr. at 17).

Brown has no past relevant work. (Tr. at 23). Relying upon the testimony of a Vocational Expert ("VE"), the ALJ found, based on Brown's age, education, work experience and RFC, that prior to the established disability onset date of May 10, 2023, there were jobs in the national economy that Brown could perform. (Tr. at 23–24). Therefore, the ALJ concluded that Brown was not disabled prior to May 10, 2023. *Id.*

## III. DISCUSSION

### A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is "supported by substantial evidence on the record as a whole and whether it is based on legal error." *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> [O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision, we also take into account whatever in the record fairly detracts from that decision. Reversal is not warranted, however, merely because substantial evidence would have supported an opposite decision.

*Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001) (internal quotations and citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high.

3

Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

**B.    Brown's Arguments on Appeal**

Brown contends that the evidence supporting the ALJ's decision is less than substantial, warranting reversal. Specifically, Brown argues that: (1) the ALJ failed to fully and fairly develop the record; (2) the ALJ erred in assessing the credibility of Brown's subjective complaints; (3) the RFC was not supported by either the examining or treating source opinion evidence; and (4) the ALJ erred at Step Five by relying on VE testimony that conflicted with the Dictionary of Occupational Titles. (Doc. 7 at 2). The Court will address each argument, in turn.

**1.    Development of the Record**

First, Brown asserts that the ALJ failed to develop the record fully. Specifically, she argues that, because the only psychological consultative examination pre-dated the relevant time period by over three years, the ALJ should have ordered an updated one to assess accurately Brown's mental impairments. (Doc. 7 at 7–8). According to Brown, absent an up-to-date psychological consultative examination, the ALJ did not have a proper foundation to determine Brown's RFC. *Id.* at 8. Further, Brown alleges that a physical consultative examination should have been ordered to determine Brown's postoperative functional capabilities, specifically regarding whether she was capable of frequent or occasional fingering and handing and whether she required the use of a handheld assistive

4

device. *Id.* at 11.

As social security hearings are non-adversarial by nature, an ALJ has a basic duty to develop a reasonably complete record. *Clark v. Shalala*, 28 F.3d 828, 830–831 (8th Cir. 1994); *Johnson v. Astrue*, 627 F.3d 316, 319–20 (8th Cir. 2010). This duty extends to cases where the claimant is represented by counsel. *Snead v. Barnhart,* 360 F.3d 834, 838 (8th Cir.2004). However, it is well-settled that a claimant has the burden of proving her disability; the ALJ does not have to play counsel for the claimant, and the ALJ's duty to develop is not never-ending. *Clark*, 28 F.3d at 830–831. Moreover, the ALJ is required to recontact a treating or consulting physician or order further testing *only* if "'the medical records presented do not provide sufficient evidence to make a decision on disability.'" *Martise v. Astrue*, 641 F.3d 909, 926–927 (8th Cir. 2011) (quoting *Johnson v. Astrue*, 627 F.3d 316, 320 (8th Cir.2010)).

As a preliminary matter, the Court notes that, at the April 6, 2023 hearing before the ALJ, Brown's attorney stated that she believed the record to be complete.[3] (Tr. at 36, 56). Furthermore, the ALJ recognized the age of the October 3, 2018 consultative mental diagnostic evaluation conducted by Dr. Steve Shry ("Dr. Shry") and its remoteness in time from Brown's current claims. (Tr. at 21). The ALJ noted, however, that despite its age, the report was consistent with more recent treatment notes from Brown's mental-health provider, Counseling Associates, and thus, remained persuasive. *Id.*

---

[3] Additionally, the record was held open for at least twenty-five days after the ALJ's decision so that Brown could augment her appeal with additional records. (Tr. 6). This extension appears to have been granted at Brown's request. *Id.* There is nothing to suggest that Brown took advantage of the extension to submit or request another report that was conducted more recently than Dr. Shry's October 3, 2018 report.

In addition to discussing the opinion of Dr. Shry, the ALJ addressed the opinions from two state-agency consultants, both finding that Brown could perform work at the light exertional level with additional postural limitations but that Brown's alleged mental impairments were not severe. (Tr. at 20–21). The ALJ found those opinions only partially persuasive because they were inconsistent with the opinion of Dr. Shry and the treatment notes from Counseling Associates.

According to treatment notes from Counseling Associates, Brown presented with depression symptoms, speech difficulties, and difficulty sleeping. (Tr. at 19–20, 938–966, 1116–1123). She was diagnosed with PTSD, major depressive disorder, anxiety, and personality disorder. *Id*. The ALJ considered these diagnoses, other medical evidence in the record, and Brown's subjective reports, and identified Brown's mental impairments as severe. (Tr. at 15). The ALJ also considered, however, that in December 2022, Brown withdrew from treatment at Counseling Associates and received discharge after three months of no contract with her providers. (Tr. at 19).

Brown testified that she had not been receiving mental health counseling at Counseling Associates because she had a change in insurance, and Counseling Associates was attempting to find her a new provider. (Tr. 50–51; 1113). Counseling Associates, however, noted in its discharge summary that Brown's treatment team "agreed discharge was appropriate" and that Brown had "disengaged from treatment" over three months

prior.[4] (Tr. 1113). Lastly, the ALJ noted that Brown stated she could complete a variety of daily activities, like self-care, doing laundry, shopping in stores, managing finances, and attending church.[5] (Tr. at 239–242, 269–272). Notwithstanding, the ALJ still assigned an RFC for simple work to accommodate Brown's mental-health limitations. (Tr. at 1113–1114). In sum, the ALJ fully developed the record with regard to Brown's mental impairments, and the ALJ's RFC was consistent with the evidence in the record as a whole.

Regarding Brown's physical impairments, Brown argues an additional consultative examination was necessary to address her post-operative hand functioning. Brown claims both of her hands are "messed up"; she cannot close her thumb; and her grasping and fingering is very limited, and she drops things frequently. (Doc. 7 at 11). The objective medical evidence paints a different picture, however. According to medical records, Brown had left thumb surgery in 2020 and did not return for follow-up treatment once her cast was removed. (Tr. 18). Brown had right thumb surgery in 2021, which was deemed successful. (Tr. 18, 544). Her right thumb was noted to be doing well in November 2021, a few months after surgery. (Tr. at 550–551). Brown also had revision surgery on her left thumb in 2021, which was successful. (Tr. 18, 879). She reported improvement after the

---

[4] Accordingly, at the time of the hearing, Brown had gone at least seven months without counseling services, which would also undermine her claims of disability. *Lancaster v. Colvin*, No. 1:14-CV-00026-BD, 2015 WL 3952880, *1–2 (E.D. Ark. June 29, 2015) (holding lapses in treatment weigh against credibility of complainant's severity of mental health impairments).

[5] Such daily activities undermine her claims of disability. *Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir. 1995) (holding that daily tasks such as cooking, cleaning, visiting friends and relatives, and attending church undermined the party's claims of disability); *see, e.g., Milam v. Colvin*, 794 F.3d 978, 982 (8th Cir. 2015) (cooking, cleaning, showering, shopping); *Wright v. Colvin*, 789 F.3d 847, 854 (8th Cir. 2015) (driving, shopping, bathing, and cooking); *Renstrom v. Astrue*, 680 F.3d 1057, 1067 (8th Cir. 2012), 680 F.3d at 1067 (vacations, daily chores, providing self-care); *Lawrence v. Chater*, 107 F.3d 674, 676 (8th Cir. 1997) (some housework, cooking, and shopping).

surgeries,[6] and examinations from 2022 onwards revealed normal motor strength and movement in her extremities. (Tr. at 987–998, 1003, 1064, 1081, 1136, 1150). Finally, contrary to Brown's assertion, there is no evidence in the record to support a claim that Brown was ever assessed with cervical radiculopathy. (Doc. 7 at 12). As noted by the Commissioner, Brown was frequently diagnosed with cervical spondylosis *without* radiculopathy. *See, e.g.*, (Tr. 1064) (diagnosis of "spondylosis without myelopathy or radiculopathy, cervical region"); (Tr. 1068, 1081, 1085, 1107, 1178, 1191, 1204, 1210, 1216) (same).

In sum, the ALJ credited Brown's complaints that she had difficulty with her hands, (Tr. at 18), considered her daily activities, and assigned an RFC with only frequent handling and fingering. The record supports these limitations.

Lastly, Brown argues that further development of the record was required regarding her alleged need for a hand-held assistive device. The Court disagrees. As the ALJ noted, Brown has never been prescribed a hand-held assistive device nor has any provider documented a medical need for use of a hand-held assistive device. (Tr. 21).

The evidence in the record before the ALJ was fairly and fully developed regarding Brown's mental and physical impairments. Thus, no additional consultative examinations were warranted. The Commissioner's decision is supported by substantial evidence on the record as a whole and should be affirmed.

---

[6] Improvement in condition supports an ALJ's finding that a claimant is not disabled. *See Lochner v. Sullivan*, 968, F.2d 725, 728 (8th Cir. 1992).

## 2.   Subjective Complaints

Brown asserts that the ALJ did not properly evaluate her subjective complaints.[7] To the contrary, the ALJ discussed at length the extent and nature of Brown's pain and subjective complaints regarding (1) side-effects from her medication (2) difficulty manipulating objects with her hands, (3) her use of a cane and a walker, and (4) her reliance on her mother, daughter, and son to complete activities of daily living. (Tr. at 17–18). The ALJ then considered those subjective complaints in conjunction with Brown's mental-health counseling records, her history of not taking pain medication as prescribed, generally normal clinical examinations, and her self-reported ability to perform daily activities. (Tr. at 18–21). The ALJ noted that Brown withdrew from counseling services. (Tr. at 19, 1113–1114). The ALJ discussed pain-management records citing back pain, but those records reflected generally normal clinical examination with normal range of motion. (Tr. at 19, 895–897). The ALJ also noted that Brown was not always compliant with treatment. (Tr. at 18-19, 710, 733, 735, 1104). For example, the medical records illustrate that, while Brown did receive pain management treatment, it was discontinued twice due to noncompliance. (Tr. 710, 764, 775–778). Specifically, her medical records note that, despite Brown alleging that she was taking her medication, her drug screens were negative

---

[7] When evaluating a claimant's subjective complaints of pain, the ALJ must consider objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the claimant's functional restrictions. *See Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019). "An ALJ need not explicitly discuss each factor," and he may "decline to credit a claimant's subjective complaints if the evidence as a whole is inconsistent with the claimant's testimony." *Id*. (internal citations omitted).

for hydrocodone. (Tr. 710, 764). The ALJ also discussed the nature of treatment for both mental and physical impairments. He concluded that her complaints of disabling symptoms were not entirely consistent with the record, (Tr. at 18–20), while acknowledging that the record and Brown's testimony support a finding of "a degree of pain." *Id.* at 20. Accordingly, the Court finds that the ALJ fully and appropriately considered Brown's subjective complaints.

### 3. RFC

Brown next contends that the RFC did not fully incorporate her limitations.[8] Specifically, Brown claims the ALJ erred in concluding, without supporting medical evidence or opinions, she could engage in light work rather than sedentary work, despite evidence that she requires a hand-held assistive device and can only engage in occasional rather than frequent handling and fingering. (Doc. 7 at 14–18). As discussed above, Brown's most recent medical records showed no motor or sensory deficits. *See, e.g.*, (Tr. 105, 563, 569, 574, 579, 585, 591, 647, 897). In fact, the medical records show that Brown had a full range of motion of the extremities and no back abnormalities. (Tr. at 987–998, 1003, 1064, 1081, 1136, 1150). Brown's thumb surgeries were ultimately successful, and she stopped seeking treatment for her hands in August 2022. (Tr. 18). Further, while her doctors noted that she used a cane, Brown has never been prescribed a hand-held assistive device nor has any provider documented a medical need for use of a hand-held assistive device. (Tr. 21).

---

[8] A claimant's RFC represents the most he can do despite the combined effects of all of his credible limitations and must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011).

In sum, the RFC for light work at the simple level was reflective of the record, and Brown has not shown that more restrictions were necessary.

### 4. Step Five

Lastly, Brown alleges that the ALJ erred at Step Five by relying on VE testimony that she could perform the job of "tagger," even though the requirements of that job (constant fingering and handling) did not comply with the assigned RFC or the ALJ's hypothetical. (Doc. 7 at 18–19). At Step Five, the burden shifts to the ALJ to show that there are significant numbers of jobs in the national economy that the claimant can perform. The ALJ may rely upon VE occupational testimony to meet this burden. *See Porch v. Chater*, 115 F.3d 567, 572 (8th Cir. 1997).

Brown asserts that the ALJ erred in relying upon VE testimony that there were jobs that Brown could perform because one of the four jobs identified ("tagger") required constant, rather that frequent, handling and fingering. (Doc. 7 at 18–20). Brown's attorney brought to the ALJ's attention at the hearing that "tagger" is "constant manipulative" and was not appropriate for Brown's restrictions. (Tr. 55–56). The ALJ acknowledged that Brown may be right and asked for time to study it. (Tr. 56). The ALJ then asked the VE to provide an additional employment option, "[j]ust in the event we have an issue [with the tagger job]." (Tr. 56). Later, in his opinion, the ALJ explained that the other three occupations identified by the VE (folder, sorter, and cleaner) provided 260,000 jobs in the national economy. (Tr. at 23). Accordingly, the number of jobs that comply with Brown's RFC and the ALJ's hypothetical well exceed the threshold for a significant number of jobs

11

in the national economy that Brown could perform.[9] Thus, the ALJ's reliance upon the VE's testimony was proper, and the ALJ did not err at Step Five.

## IV.   CONCLUSION

There is substantial evidence to support the Commissioner's decision that Brown was not disabled prior to May 10, 2023. The record was fully and fairly developed, and the ALJ properly evaluated Brown's subjective complaints. Additionally, the RFC incorporated all of Brown's credible limitations, and the ALJ did not err at Step Five.

IT IS THEREFORE RECOMMENDED THAT:

1.   The Commissioner's decision be AFFIRMED.

2.   Judgment be entered for the Defendant.

DATED this 8th day of January, 2025.

_____
UNITED STATES MAGISTRATE JUDGE

---

[9] The Eighth Circuit has held that "as few as 10,000 national jobs [is] a sufficient number to constitute significant national work." *Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997).